**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

2005 MAR -9  PH 4:27

|  |  |  |
|---|---|---|
| IRENE BARLOW,<br>            Plaintiff, | §<br>§<br>§ |  |
| VS. | §<br>§ |  |
| PFIZER, INC.; WARNER-LAMBERT<br>COMPANY, L.L.C., formerly known as<br>WARNER-LAMBERT COMPANY,<br>including its division PARKE-DAVIS, DR.<br>JAY SEASTRUNK, M.D.,<br>REHABILITATION STAFFING<br>SERVICES, LTD., AND GERO-<br>PSYCHIATRIC SERVICE<br>OPPORTUNIT,<br>            Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. **A05CA  175 SS**<br><br>JURY REQUESTED |

### DEFENDANTS PFIZER INC AND WARNER-LAMBERT COMPANY, L.L.C.'S
### SECOND NOTICE OF REMOVAL

TO:     The United States District Court for the Western District of Texas, Austin Division.

COME NOW Pfizer Inc ("Pfizer") and Warner-Lambert Company, L.L.C., formerly known as Warner-Lambert Company, on its own behalf and on behalf of its unincorporated Parke-Davis division ("Warner-Lambert"), Defendants in the above-styled cause, and file this Notice of Removal of said cause to the United States District Court for the Western District of Texas, Austin Division, and would respectfully show the Court as follows:

### I.     Second Removal of This Case

1.     Defendants are removing this products liability case a second time because they learned on March 1, 2005, that Dr. Jay Seastrunk, a Defendant whom Plaintiff alleged to be a Texas citizen, *actually is a citizen of California and has been since 1999*. (Dr. Seastrunk was only recently served according to his counsel.) Moreover, the other two alleged Texas

1

defendants — two business entities alleged to be Dr. Seastrunk's employers——ceased to exist years ago, and are fraudulently joined for that and other reasons, as set forth below.[1]

## II.    History of First Removal

2.      The underlying action was originally filed on July 13, 2004 in the 200th Judicial District Court of Travis County, Texas, Cause No. GN402172. Plaintiff claims she was prescribed Neurontin for a so-called "off-label" use – to treat her alleged bipolar disorder. Plaintiff's Original Petition filed July 13, 2004 ("Pet.") at ¶ 26. She claims that because Neurontin did not improve her psychiatric condition, and she did not receive "appropriate medicine in appropriate doses," she shot herself in the chest with a .38 caliber pistol. *Id.* at ¶ 27.

3.      Plaintiff alleges that Dr. Seastrunk is a citizen of Texas. She claims he represented to physicians in Texas that Pfizer's drug Neurontin was beneficial for 'off-label' uses and that his "representations, like those of the other defendants, were made with the intent to and did induce ordinary treating physicians to increase their 'off-label' prescription of Neurontin to patients. . . ." Plaintiff's Original Petition ("Pet.") ¶ 21. She also alleges that Gero-Psychiatric Service Opportunities, Inc.[2] and Rehabilitation Staffing were Texas corporations, and is suing both of these entities as employers of Dr. Seastrunk under *respondeat superior*. Pet. Pet. ¶¶ 5-6, 21; December 20, 2004 Order of Remand ("Order") at 2.

4.      On August 13, 2004, Defendants timely removed this case arguing that the non-diverse defendants, Dr. Jay Seastrunk, Gero-Psychiatric Service Opportunities, and Rehabilitation Staffing Services Ltd., were fraudulently joined. At that time, Dr. Seastrunk had not been served, and Defendants had no reason to question Plaintiff's representation that Dr. Seastrunk was a Texas citizen. Defendants alleged that Plaintiff failed to state a claim against

---

[1]     Moreover, even if one of the entities, Rehabilitation Staffing Services Ltd., were still in existence, it would be a citizen of California, not Texas. *Infra,* ¶ 12.

[2]     Plaintiff incorrectly named this party "Gero-Psychiatric Service Opportunit" in her Petition.

2

Dr. Seastrunk because the gist of her complaint about him — that he recommended the "wrong" drug to treat a condition — was fundamentally a claim for medical malpractice, and Plaintiff did not allege the requisite doctor-patient relationship with him. In response, Plaintiff file a Motion to Remand in which she abandoned all of her claims against Dr. Seastrunk except conspiracy — *i.e.* that Dr. Seastrunk conspired with Pfizer and Warner-Lambert to promote "off-label" use of Neurontin. Motion to Remand, ¶ 3.1.

5.      After a hearing on the motion, this Court held that, in the absence of evidence, the Defendant had not demonstrated that Plaintiff could not maintain a conspiracy claim against Dr. Seastrunk. Dec. 20, 2004 Order at 9. The Court also noted, however, that Rehabilitation Staffing and Gero-Psychiatric were not sued as conspirators since an agent cannot conspire with its principal. Order at 2, n. 2 (*citing Bradford v. Vento*, 48 S.W.3d 749, 761 (Tex. 2001)). Both at the hearing and in its opinion, the Court noted that if certain circumstances changed, Defendants could remove the action to federal court a second time. Order at 9, n. 7.

### III.   Diversity of Citizenship

6.      Plaintiff is a citizen of the State of Texas.

7.      Pfizer is a Delaware corporation with its principal place of business in New York.

8.      Warner-Lambert is a Delaware corporation with its principal place of business in New York.

9.      Dr. Jay Seastrunk, M.D., contrary to Plaintiff's representations in her petition and in her motion to remand, has been domiciled in and is therefore a citizen of California, and has been since 1999. Exhibit 1, ¶ 2. *See Robertson v. Cease*, 97 U.S. 646, 648-650, 24 L.Ed. 1057 (1878); *Coury v. Prot*, 85 F.3d 244, 249-50 (5th Cir. 1996) (person is citizen of state in which he is domiciled). He was thus a citizen of California at the time Plaintiff filed suit and at the time of this removal. The citizenship of the parties at the time suit was filed and at the time of removal

3

determines whether diversity of citizenship exists. *Coury v. Prot*, 85 F.3d 244, 248-49 (5th Cir. 1996).

10.     Gero-Psychiatric Service Opportunities, Inc. was a Texas corporation; however it forfeited its charter on March 23, 2001. Exhibit 2, Tab 1. Under art. 7.12(F)(1) of the Texas Business Corporation Act, a corporation whose charter has been forfeited pursuant to the Tax Code is considered a "dissolved corporation." Under art. 7.12(A)(1) of that statute, a "dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution" for purposes of "prosecuting or defending in its corporate name any action or proceeding by or against the dissolved corporation." That period thus expired for Gero-Psychiatric on March 23, 2004, approximately four months before Ms. Barlow filed suit.

11.     Contrary to Plaintiff's allegation, Rehabilitation Staffing Services Ltd is not a Texas corporation. It was a Texas limited partnership, and Gero-Psychiatric was its general partner. Exhibit 2, Tab 2. Under the limited partnership agreement, however, the dissolution of Gero-Psychiatric caused the automatic dissolution of the partnership 90 days later, since no other general partner was appointed, according to the certificate on file with the Secretary of State. Exhibit 1, ¶ 4 and Tab 1 at ¶ 7.1(e); Exhibit 2, Tab 2.

12.     Even if Rehabilitation Staffing were a viable legal entity, it would be a citizen of California. For purposes of diversity jurisdiction, the citizenship of a limited partnership is determined by the citizenship of each of its partners, both general and limited. *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 192 (1990). Gero-Psychiatric was the general partner of Rehabilitation Staffing, but because that corporation is defunct, it is fraudulently joined and therefore its former citizenship is irrelevant. The sole limited partner of Rehabilitation Staffing is the Seastrunk Family Trust. Exhibit 1, Tab 1 at p. 23. The citizenship of a trust is determined by the citizenship of the trustees. *Greenough v. Tax Assessors of City of Newport*, 331 U.S. 486,

495-96 (1947). Dr. Seastrunk and his wife are the trustees of the Seastrunk Family Trust, and they are both citizens of California. Exhibit 1, ¶ 2 and Tab 1 at p. 23.

## IV.   Fraudulent Joinder

13.   Because Gero-Psychiatric and Rehabilitation Staffing are defunct, there is no reasonable possibility Plaintiff could establish her claim against them. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286, n. 4 (5th Cir. 2000). ("[T]here must at least be arguably a *reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.); (emphasis in original); *see also Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (citing *Badon's* "reasonable possibility" standard with favor).

14.   In the alternative, Gero-Psychiatric and Rehabilitation Staffing are fraudulently joined because Plaintiff has conceded in this Court that she cannot assert any claim against Dr. Seastrunk except conspiracy, and as this Court recognized, the two business entities cannot be liable for conspiring with Dr. Seastrunk, their agent. Order at 2, n. 2.

15.   Finally, Dr. Seastrunk would be fraudulently joined even if he were a citizen of Texas. As this Court noted, Plaintiff's claim against him is that he "conspired" with Pfizer and Warner-Lambert to misrepresent Neurontin's benefits to other doctors. Pet. at ¶¶ 10-28; Order at 5-8. Yet Dr. Seastrunk refutes these claims in the attached affidavit:

I have prescribed Neurontin in my practice for so-called "off-label" uses, such as for chronic fatigue syndrome. I did so based on my experience and professional judgment. I never had an agreement with that company regarding promoting Neurontin for off-label use to patients or other doctors. I never made statements about Neurontin to my patients, the public or other doctors that I did not believe to be true and medically justified.

Exhibit 1, ¶ 5. Based on this evidence, there is no reasonable chance that Plaintiff can establish her conspiracy claim against Dr. Seastrunk. *See* Order at 8 (noting that a removing party can establish fraudulent joinder through evidence that plaintiff has no possibility of recovery on the claim.) (citing *Badon v. RJR Nabisco Inc.*, 224 F.2d 382, 389-90, 393-94 (5th Cir. 2000)).

5

### V. Co-Defendants' Consent To Removal

16. Dr. Seastrunk consents to removal, as does Rehabilitation Staffing, assuming for the sake of argument it still exists. Exhibits 3 and 4. In any event, the consent of Dr. Seastrunk, Rehabilitation Staffing, and Gero-Psychiatric Service is not necessary since they are fraudulently joined, and the latter two parties do not even exist. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir 1993). In any event,

### VI. Amount in Controversy

17. Plaintiff's Original Petition establishes on its face that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Plaintiff alleges that she has sustained personal injuries and damages, including past and future medical expenses, past and future lost wages; past and future loss of earning capacity, past and future physical disability, past and future physical disfigurement, and past and future pain and suffering and mental anguish. Pet., ¶ 45. Plaintiff also seeks punitive damages. *Id.*

### VII. Timeliness

18. Defendants first learned that Dr. Seastrunk was a citizen of California in an oral communication with his counsel on March 1, 2005. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b) because it is filed within thirty days of March 8, 2005, the date Defendants received Dr. Seastrunk's signed affidavit establishing his California citizenship and his fraudulent joinder, and also within thirty days of their first notice of his California citizenship on March 1.

6

## VIII.   Conclusion

19.    For the reasons set forth above, this action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. § 1332, and is one which may be removed to this Court by Pfizer and Warner-Lambert pursuant to the provisions of 28 U.S.C. § 1441(b), in that, excluding the fraudulently joined defendants (the non-existent Gero-Psychiatric and Rehabilitation Staffing against whom plaintiff cannot maintain a conspiracy claim in any event), it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Copies of all process, pleadings and orders filed in the state court are attached hereto.

20.    Upon filing of this notice of the removal of this cause, written notice of the filing is being given by Pfizer and Warner-Lambert to Plaintiff and Plaintiff's counsel as required by law. A copy of the notice with proof of service of it is attached hereto. A copy of this notice is also being filed with the Clerk of the state district court in which this cause was originally filed.

WHEREFORE, Pfizer and Warner-Lambert pray that the above-styled action pending against them in the 200th Judicial District Court of Travis County, Texas, be removed to this Honorable Court. Pfizer and Warner-Lambert pray for such other relief to which they may be entitled.

Respectfully submitted,

CLARK, THOMAS & WINTERS
A Professional Corporation

By:    _____
Kenneth J. Ferguson
State Bar No. 06918100
Susan E. Burnett
State Bar No. 20648050
Jeffrey R. Lilly
State Bar No. 00787905

7

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**ATTORNEYS FOR DEFENDANTS
PFIZER INC and WARNER LAMBERT
COMPANY, L.L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 9th day of March, 2005:

### *Via Certified Mail, Return Receipt Requested*

Jack W. London
LAW OFFICES OF JACK W. LONDON & ASSOCIATES, P.C.
106 E. 6th Street, Suite 700
Austin, Texas  78701

Archie Carl Pierce
WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas  78701
*Attorneys for Plaintiff*

### *Via Regular Mail*

Robert K. Dowd, P.C.
3141 Hood Street, Suite 650
Dallas, Texas  76219-5026

**Attorney for Dr. Jay Seastrunk, M.D.**

William E. Johnson III, P.C.
The Law Office of William E. Johnson III, P.C.
2828 Woodside
Dallas, Texas 75204]

**Attorney for Rehabilitation Staffing Services, Ltd.**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged but Stored with Document in Case File

## See Original File to View/Copy Document/Attachment(s)

Civil Case No.      1:05CV175-SS

Irene Barlow

VS.

Pfizer, Inc., et. al.

Attachments to
Document #:          1

Description:        Exhibits to Notice of Removal

File Date:          March 9, 2005

Prepared by:        JK

### This sheet to be imaged as the last page.

## DECLARATION OF DR. JAY SEASTRUNK

1.      My name is Jay Seastrunk M.D. I am over the age of 21, of sound mind, and am
fully competent to make this declaration. I have personal knowledge of the facts stated herein
and they are true and correct.

2.      I have been domiciled in and a citizen of California since 1999. My wife, Denise
Marie Seastrunk has been domiciled in and a citizen of California since 1999.

3.      Attached to this declaration is a true and correct copy of the limited partnership
agreement for Rehabilitation Staffing Ltd. Gero-Psychiatric Service Opportunities Inc. was the
general partner of this limited partnership. The sole limited partner was the Seastrunk Family
Trust. My wife and I are trustees of the Seastrunk Family Trust, and the trust is being
administered in California.

4.  ·    Under the terms of the limited partnership agreement, the partnership is
automatically dissolved if the general partner is dissolved or otherwise ceases to exist and a new
general partner is not appointed within 90 days.

5.      I am physician licensed in Texas and California. I have prescribed Neurontin in
my practice for so-called "off-label" uses, such as for chronic fatigue syndrome. I did so based
on my experience and professional judgment. I never had an agreement with the company that
makes Neurontin regarding promoting Neurontin for off-label use to patients or other doctors. I
never made statements about Neurontin to my patients, the public or other doctors that I did not
believe to be true and medically justified.

6.      I declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct.

Jay Seastrunk, M.D.

1

# LIMITED PARTNERSHIP AGREEMENT

## OF

### REHABILITATION STAFFING SERVICES, LTD.
### A Texas Limited Partnership

# LIMITED PARTNERSHIP AGREEMENT
## OF
## REHABILITATION STAFFING SERVICES, LTD
### A Texas Limited Partnership

**Article I**  **Definitions and Glossary of Term**

| | | | |
|---|---|---|---|
| Section 1.1 | "Act" | pg. | 1 |
| Section 1.2 | "Agreement" | pg. | 1 |
| Section 1.3 | "Capital Account" | pg. | 1 |
| Section 1.4 | "Capital Contribution" | pg. | 1 |
| Section 1.5 | "Cash Flow" | pg. | 1 |
| Section 1.6 | "Certificate" | pg. | 2 |
| Section 1.7 | "Code" | pg. | 2 |
| Section 1.8 | "Depreciation" | pg. | 2 |
| Section 1.9 | "Distributions" | pg. | 2 |
| Section 1.10 | "General Partner" | pg. | 2 |
| Section 1.11 | "Gross Asset Value" | pg. | 2 |
| Section 1.12 | "Income" and "Losses" | pg. | 3 |
| Section 1.13 | "Interest" | pg. | 3 |
| Section 1.14 | "Limited Partners" | pg. | 3 |
| Section 1.15 | "Majority in Interests of the Partners" | pg. | 3 |
| Section 1.16 | "Partners" | pg. | 4 |
| Section 1.17 | "Partnership" | pg. | 4 |
| Section 1.18 | "Partnership Property" | pg. | 4 |
| Section 1.19 | "Regulatory Allocations" | pg. | 4 |
| Section 1.20 | "Treasury Regulations" and "Regulations" | pg. | 4 |

**Article II**  **Formation; Name; Purposes; Office; and Term**

| | | | |
|---|---|---|---|
| Section 2.1 | Partnership Formation | pg. | 4 |
| Section 2.2 | Name of the Partnership | pg. | 4 |
| Section 2.3 | Purposes | pg. | 5 |
| Section 2.4 | Office and Principal Plan of Business; | | |
| | Registered Agent | pg. | 5 |
| Section 2.5 | Commencement and Term | pg. | 5 |

**Article III**  **Capital Contributions; Capital Accounts; Liability of Partners; and Percentage Interests**

| | | | |
|---|---|---|---|
| Section 3.1 | Initial Capital Contributions | pg. | 6 |
| Section 3.2 | Additional Capital Contributions | pg. | 6 |
| Section 3.3 | Maintenance of Capital Accounts; Withdrawal; | | |
| | Additional Contributions; Interest | pg. | 6 |

| Section 3.4 | Liability of Partners | pg. 6 |
| Section 3.5 | Percentage Interests | pg. 7 |

**Article IV**        **Management of the Partnership**

| Section 4.1 | Execution of Partnership Contracts; General Partner as Attorney-in-Fact | pg. 7 |
| Section 4.2 | Exclusive Control of the General Partner | pg. 7 |
| Section 4.3 | General Powers and Authority of the General Partner | pg. 7 |
| Section 4.4 | Duties of the General Partner | pg. 10 |
| Section 4.5 | General Partner to Act in Best Interests of Partnership | pg. 10 |
| Section 4.6 | Right to Rely on the General Partner | pg. 10 |
| Section 4.7 | Limitations on Powers of the General Partner | pg. 10 |
| Section 4.8 | Tax Matters Partner | pg. 11 |
| Section 4.9 | Other Business of Partners | pg. 12 |
| Section 4.10 | Limited Indemnification of Partners | pg. 12 |
| Section 4.11 | No Management by Limited Partners and Transferees | pg. 12 |
| Section 4.12 | Compensation to General Partner | pg. 12 |

**Article V**        **Allocations**

| Section 5.1 | Allocation of Losses | pg. 13 |
| Section 5.2 | Miscellaneous | pg. 13 |

**Article VI**        **Distributions**

| Section 6.1 | Distributions of Cash Flow | pg. 14 |
| Section 6.2 | Distributions Among General and Limited Partners | pg. 13 |
| Section 6.3 | Tax Withholding | Pg. 14 |

**Article VII**        **Dissolution of the Partnership; Winding Up**

| Section 7.1 | Dissolution of the Partnership | pg. 14 |
| Section 7.2 | Winding Up and Liquidation | pg. 15 |
| Section 7.3 | Compliance with Timing Requirements of Regulations | pg. 16 |

<u>**Article VIII**</u>                         <u>**Withdrawal of Partners; Transfer of Partners'**</u>
                                  <u>**Interests; and Admission of New Partners**</u>

Section 8.1        Restriction on Withdrawal; Transfer                          pg. **16**
Section 8.2        Effect of Withdrawal; Death of Partner                        pg. **17**
Section 8.3        Continuation of Partnership Following Withdrawal              pg. **17**
Section 8.4        Admission of New Partners                                     pg. **17**
Section 8.5        Conditions Precedent to Transfer of Partner's Interest        pg. **17**
Section 8.6        Substitute or Additional Partners; Conditions Precedent       pg. **17**
Section 8.7        Further Transfer by Transferee                                pg. **18**
Section 8.8        Determination of Distributive Share When Partner's
                   Interest Changes                                              pg. **18**
Section 8.9        Rights and Liabilities of and Restrictions on Transferee      pg. **19**

<u>**Article IX**</u>                          <u>**Books; Depository Accounts; Accounting Reports;**</u>
                                  <u>**and Elections**</u>

Section 9.1        Books of Account                                              pg. **19**
Section 9.2        Access to Records; Audit                                      pg. **19**
Section 9.3        Depository Accounts and Investment of Funds                   pg. **19**
Section 9.4        Reports                                                       pg. **20**
Section 9.5        Tax Accounting Methods; Periods; Elections                    pg. **20**

<u>**Article X**</u>                           <u>**Meetings and Voting Rights of Partners**</u>

Section 10.1       Meetings                                                      pg. **20**
Section 10.2       Unanimous Written Consent                                     pg. **21**

<u>**Article XI**</u>                          <u>**Miscellaneous Provisions**</u>

Section 11.1        Waiver of Provisions                      pg. 22
Section 11.2        Interpretation and Construction           pg. 22
Section 11.3        Governing Law; Jurisdiction               pg. 22
Section 11.4        Partial Invalidity                        pg. 22
Section 11.5        Binding on Successors                     pg. 22
Section 11.6        Notices and Delivery                      pg. 22
Section 11.7        Counterparts                              pg. 23
Section 11.8        Statutory Provisions                      pg. 23

**Exhibit A**                                                 pg. 24

**Exhibit B**                                                 pg. 25

**Exhibit C**

**Section C.1**          **Definitions**

      (a)    "Adjusted Capital Account:          pg. 26
      (b)    "Nonrecourse Deductions"          pg. 26
      (c)    "Nonrecourse Liability"          pg. 26
      (d)    "Partner Nonrecourse Debt"          pg. 26
      (e)    "Partner Nonrecourse Debt Minimum Gain"      pg. 26
      (f)    "Partner Nonrecourse Deductions"          pg. 26
      (g)    "Partnership Minimum Gain"          pg. 26

**Section C.2**          **Maintenance of Capital Accounts**          pp.26-27

**Section C.3**          **Special Allocations**

      (a)    Minimum Gain Chargeback          pg. 27
      (b)    Partner Minimum Gain Chargeback          pg. 28
      (c)    Qualified Income Offset          pg. 28
      (d)    Gross Income Allocation          pg. 28
      (e)    Nonrecourse Deductions          pg. 28
      (f)    Partner Nonrecourse Deductions          pg. 29
      (g)    Section 754 Adjustments          pg. 29

**Section C.4**          **Curative Allocations**          pg. 29

**Section C.5**          **Code Section 704(c) Tax Allocations**          pg. 29

**Section C.6**          **Compliance with Treasury Regulations**          pg. 30

**Exhibit D**          pg. 31

## LIMITED PARTNERSHIP AGREEMENT
## OF
## REHABILITATION STAFFING SERVICES, LTD.
### A Texas Limited Partnership

**THIS LIMITED PARTNERSHIP AGREEMENT** is made and entered into as of the 11th day of May, 1998 (the "Effective Date"), in Dallas, Dallas County, Texas, by and among Gero-Psychiatric Service Opportunities, Inc., as the General Partner, and the Seastrunk Family Irrevocable Trust, as the Limited Partner.

The General Partner and the Limited Partner are hereinafter sometimes individually referred to as "Partner" and collectively referred to as "Partners". The names, addresses, and taxpayer identification numbers of the partners are listed on Exhibit A attached hereto.

### ARTICLE I
### Definitions and Glossary of Terms

**Section 1.1** "Act" shall mean the Texas Revised Uniform Limited Partnership Act, as in effect in Texas and set forth in Article 6132a-1 of Vernon's Annotated Revised Civil Statutes of the State of Texas, as such Act may be amended from time to time.

**Section 1.2** "Agreement" shall mean this Limited Partnership Agreement, as such Agreement may be amended from time to time.

**Section 1.3** "Capital Account" shall mean, with respect to each Partner or a transferee of a Partner, an account maintained and adjusted in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv) and in accordance with the provisions of Section C.2 set forth in Exhibit C attached hereto.

**Section 1.4** "Capital Contributions" shall mean the amount of money and the initial Gross Asset Value of any property (other than money) contributed to the Partnership by each Partner with respect to the interest of such Partner.

**Section 1.5** "Cash Flow" shall mean cash available to the Partnership as a result of the operations, investments, financings or refinancings of the Partnership, including without limitation net proceeds from all sales and other dispositions of Partnership property, after (i) payment of all expenses, costs, and indebtedness of the Partnership, (ii) acquisition of investments or other capital assets, and (iii) the establishment of reasonable reserves for working capital, debt service, contingencies, investments, and replacements. "Cash Flow" shall not be reduced by depreciation, amortization, cost recovery deductions, or similar allowances.

1

**Section 1.6**  "<u>Certificate</u>" shall mean the certificate of limited partnership, together with any amendments thereto, required to be filed by the Partnership pursuant to the Act.

**Section 1.7**  "<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended from time to time, or any successor federal revenue law and, as the context requires, shall include any final Treasury Regulations, revenue rulings, and revenue procedures thereunder or under any predecessor federal revenue law.  Any reference herein to a section of the Code or Treasury Regulations shall also be deemed to refer to any successor section thereof.

**Section 1.8**  "<u>Depreciation</u>" shall mean, for each fiscal year or other period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such year or other period, except that, if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes, Depreciation shall be an amount which bears the same ratio to such Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery reduction for such year or other period bears to such adjusted tax basis.

**Section 1.9**  "<u>Distributions</u>" shall mean distributions of cash or other property made by the Partnership to the Partners from any source.

**Section 1.10**  "<u>General Partner</u>" shall mean Gero-Psychiatric Service Opportunities, Inc. and any other person or persons set forth as General Partner(s) on Exhibit A attached hereto, and any other person who is subsequently admitted as a general partner in the Partnership in accordance with the terms and conditions of this Agreement.

**Section 1.11**  "<u>Gross Asset Value</u>" shall mean, with respect to any asset, the asset's adjusted basis for accounting purposes, except as follows:

(a)  The initial Gross Asset Value of any asset contributed by a Partner to the partnership shall be the gross fair market value of such asset, as determined by the contributing Partner and the Partnership;

(b)  The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partner, as of the following times: (i) the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the Partnership to a General Partner of more than a *de minimis* amount of property as consideration for an Interest in the Partnership; and (iii) as of the termination of the Partnership for federal income tax purposes pursuant to Code Section 708(b)(1)(B); and

(c)  If the Gross Asset Value of an asset has been determined or adjusted pursuant to this Section, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Income and Losses.

2

**Section 1.12** "Income" and "Losses" shall mean, for each fiscal year or other period, an amount equal to the Partnership's taxable income or loss for such year or period, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be separately stated pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(a) Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Income and Losses pursuant to this Section shall be added to such taxable income or loss;

(b) Any expenditures of the Partnership not deductible in computing its taxable income and not properly chargeable to a Capital Account and not otherwise taken into account in computing Income and Losses pursuant to this Section shall be subtracted from such taxable income or loss;

(c) Gain or loss resulting from any disposition of Partnership Property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(d) In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation as defined in Section 1.8 hereof; and

(e) Notwithstanding any other provision of this Section, any items that are specially allocated pursuant to Sections C.3 or C.4 of Exhibit C attached hereto shall not be taken into account in computing Income or Losses.

**Section 1.13** "Interest" shall mean all of the rights of each Partner with respect to the partnership and the Partnership Property created under this Agreement or under the Act. The Interests of the partners shall be listed on Exhibit B attached hereto, as such exhibit is amended from time to time in accordance with the terms hereof.

**Section 1.14** "Limited Partner" or "Limited Partners" shall refer to the Seastrunk Family Irrevocable Trust, and collectively to those other persons, if any, listed as Limited Partners on Exhibit A and to any persons who are subsequently admitted as Limited Partners in the Partnership in accordance with the terms and conditions of this Agreement.

**Section 1.15** "Majority in Interest of the Partners" shall mean the Partners holding at least fifty-one percent (51%) of the Interests in the Partnership.

3

**Section 1.16** "Partners" shall refer collectively to the General Partner(s) and the Limited Partner(s) listed on Exhibit A attached hereto and to any persons who are subsequently admitted as Partners in the Partnership in accordance with the terms and conditions of this Agreement. The names, addresses, and taxpayer identification numbers of the Partners shall be listed on Exhibit A attached hereto, as such exhibit may be amended from time to time. "Partner" shall mean any one of the Partners.

**Section 1.17** "Partnership" shall mean the limited partnership formed pursuant to this Agreement and the Certificate.

**Section 1.18** "Partnership Property" shall mean all real and personal property acquired by the Partnership and improvements thereon and investments and reinvestments thereof, and shall include both tangible and intangible property and the Partnership's business or businesses and the assets thereof.

**Section 1.19** "Regulatory Allocations" shall mean certain allocations of income, loss, gain or other tax attributes in accordance with the Regulations promulgated by the Internal Revenue Service under Subchapter K of the Internal Revenue Code of 1986 (as such regulations and Code may be amended from time to time) as defined in Section C.4 of Exhibit C attached hereto.

**Section 1.20** "Treasury Regulations" and "Regulations" shall mean the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

Certain other capitalized terms not defined above shall have the meanings given such terms in this Agreement or in Exhibit C attached hereto.

## ARTICLE II
## Formation; Name; Purposes; Office; and Term

**Section 2.1** Partnership Formation. The Partnership shall be formed as a limited partnership under and pursuant to the Act and upon the terms and conditions set forth in this Agreement. Promptly upon the execution hereof, the General Partner shall execute and file the Certificate and all other such instruments or documents and shall do or cause to be done all such filing, recording, or other acts as may be necessary or appropriate from time to time to comply with the requirements of law for the formation and/or operation of a limited partnership in the State of Texas, and to assure that each Limited Partner obtains and maintains the status of a limited partner under the laws of the State of Texas and any other applicable jurisdiction.

**Section 2.2** Name of Partnership. The name of the Partnership shall be Rehabilitation Staffing Services, Ltd.

4

**Section 2.3** Purposes. The purposes of the Partnership are as follows:

(a) To acquire, own, hold, invest, sell and exchange common and preferred stocks, notes, bonds, debentures and other obligations, mutual funds, general and limited partnership interests, and such other investments as the General Partner shall determine.

(b) To acquire, own, hold, develop, lease, operate, sell, and exchange real property.

(c) To manufacture, sell, distribute, license and otherwise deal with manufactured products of any type or description selected by the General Partner.

(e) To provide medical personnel staffing services to entities requiring such services.

(e) To do all things reasonably incidental to purposes described in Sections 2.3(a), 2.3(b), 2.3(c) and 2.3(d) above.

(f) To undertake such other purposes as may be lawfully undertaken by the Partnership under the laws of the State of Texas.

The Partnership may execute and deliver all instruments and documents and perform all acts and undertakings and engage in all activities and transactions as may, in the General Partner's determination, be necessary or advisable to carry out the foregoing objects and purposes.

**Section 2.4** Office and Principal Place of Business; Registered Agent. The office and principal place of business of the Partnership shall be maintained at 17250 Knoll Trail, #1505, Dallas, Texas 75248, or at such other place as the General Partner shall designate in the latest filed Certificate or amendment thereto. The registered agent at such address shall be Jay W. Seastrunk II, or such other person who shall be set forth in the latest filed Certificate or amendment thereto.

**Section 2.5** Commencement and Term. The Partnership shall commence as of the Effective Date and shall continue until December 31, 2025, unless sooner terminated. The Partnership may be continued beyond its scheduled termination date by the written agreement of a Majority in Interests of the Partners.

5

## ARTICLE III
## Capital Contributions; Capital Accounts;
## Liability of Partners; and Percentage Interests

**Section 3.1** Initial Capital Contributions. The Partners, upon the execution of this Agreement, shall contribute, in cash or in kind, capital to the Partnership in the amounts set forth in Exhibit B attached hereto. Capital Contributions in kind shall be made as agreed upon by the Partners, and for purposes of determining Capital Accounts and Interests of the Partners, Capital Contributions in kind shall be valued at fair market value as established by agreement of the contributing Partner and the Partnership.

**Section 3.2** Additional Capital Contributions. If, in the General Partner's determination, additional capital is needed for Partnership purposes, then the existing Partners shall have the right to make additional contributions to the Partnership pro rata based on their respective Interests in an aggregate amount equal to the additional capital required. If all Partners do not desire to make additional contributions, then Partners shall have the right to make additional contributions to the Partnership non-pro-rata.

If the Partnership obtains additional capital, then Interests of the Partners and allocations and Distributions to the Partners shall be adjusted in order to fairly reflect a contributing Partner's additional Capital Contribution based on the ratio of the fair market value of such Partner's additional Capital Contribution to the fair market value of the Partnership assets (net of Partnership liabilities) as of the date of such additional Capital Contribution. In such case, an amended Exhibit B shall be attached to this Agreement to reflect the adjusted Interests of the Partners.

**Section 3.3** Maintenance of Capital Accounts; Withdrawals; Additional Contributions; Interest. Individual Capital Accounts shall be maintained for each of the Partners. No Partner shall be entitled to withdraw any part of his Capital Account or to receive any Distribution or to make any additional contribution except as expressly provided herein. No Partner shall be entitled to receive any interest on his contributions to the capital of the Partnership or with respect to his Capital Account except as expressly provided herein.

**Section 3.4** Liability of Partners. No Limited Partner shall be liable for any debts or losses of capital or income of the Partnership, or be required to contribute or lend funds to the Partnership other than his initial Capital Contribution described in Section 3.1 above, and his additional Capital Contributions described in Section 3.2 above, if any additional Capital Contributions are made by such Limited Partner. The General Partner shall have unlimited liability for the repayment and discharge of all debts and obligations of the Partnership (other than nonrecourse debts and obligations, if any), provided that payment shall be made first from partnership assets.

6

**Section 3.5** Percentage Interests. Whenever it shall be necessary for voting or other purposes specified herein to determine the percentage Interest of one or more Partners in the Partnership relative to a group of Partners or to all Partners, that percentage Interest shall be initially determined by the provisions of Exhibit B. Upon subsequent Capital Contributions by one or more Partners, or in the event that the Interests of the Partners are otherwise adjusted, such percentage Interests shall be determined as set forth herein or as agreed upon by all Partners. In the event a Partner transfers any part of his Interest as permitted by this Agreement, the transferee shall succeed to the pro rata portion of such Interest that is acquired by the transferee.

## ARTICLE IV
## Management of the Partnership

**Section 4.1** Execution of Partnership Contracts; General Partner as Attorney-in-Fact. All contracts and agreements undertaken by the Partnership, and any other documents, instruments, certificates, and filings shall be executed by the General Partner or such person as may be designated in writing by the General Partner to execute any contract, agreement, document, instrument, certificate, or filing; and in such contracts and agreements, the Partnership shall be identified as a limited partnership. The Partners shall promptly execute (with acknowledgement if required) at the request of the General Partner, any and all instruments necessary or appropriate to ratify or confirm the authority of the General Partner hereunder. The Limited Partner, and each of them, by execution of this Agreement irrevocably make, constitute, and appoint the General Partner, with full power of substitution, as the true and lawful attorney for such Limited Partner to make, execute, sign, acknowledge, and file this Agreement, the Certificate, and any and all other contracts, agreements, documents, instruments, certificates, or filings necessary or appropriate in connection with the operation of the Partnership in the ordinary course of its business in the name, place, and stead of such Limited Partner; and to take any further action which the General Partner shall deem necessary or advisable in connection with any of the foregoing. Each Limited Partner acknowledges and agrees that only one signature, the signature of the General Partner or his designated representative, shall be required for any and all contracts, agreements, documents, instruments, certificates, or filings necessary or appropriate in connection with the operation of the Partnership in the ordinary course of its business.

**Section 4.2** Exclusive Control of the General Partner. Subject to the express terms and conditions of this Agreement, the General Partner shall have complete authority over and exclusive management and control of the business and affairs of the Partnership, and the General Partner shall have the power and authority to do all acts necessary or appropriate to carry out the purposes of the Partnership.

**Section 4.3** General Powers and Authority of the General Partner. Without in any way limiting the exclusive control granted to the General Partner under Section 4.2 above, but subject to the express terms and conditions of this Agreement, including but not limited to Section 4.7 below, the General Partner shall have the following specific powers and authority:

    (a)  To do such acts and incur such expenses on behalf of the Partnership and to expend such of the Partnership's funds as may be necessary or advisable in connection with the conduct of the Partnership's business and purposes;

    (b)  To engage and compensate such agents, attorneys, accountants, custodians, and other advisers and consultants as may be necessary or advisable in connection with the conduct of the Partnership's business and purposes;

    (c)  To receive, buy, sell, exchange, trade, encumber, pledge, hypothecate, and otherwise deal in and with securities and other Partnership Property;

    (d)  To open, maintain, and close investment accounts with brokers, and to open, maintain, and close managing agency accounts with banks and other financial institutions on behalf of the Partnership, and to pay the customary fees and charges applicable to transactions in all such accounts;

    (e)  To open, maintain, and close bank accounts and custodial accounts on behalf of the Partnership, and to draw checks and other orders for the payment of money thereon;

    (f)  To file on behalf of the Partnership all required federal, state, and local tax returns and other documents relating to the Partnership;

    (g)  To make any and all elections for federal, state, and local tax purposes, including without limitation, any election, if permitted by applicable law, to adjust the basis of the Partnership Property pursuant to Code Sections 754, 734(b), and 743(b), or comparable provisions of state or local law, in connection with transfers of Interests and Partnership Distributions;

    (h)  To exercise all of the Partnership's rights, powers, and privileges of ownership with respect to the Partnership Property and any other rights held by the Partnership, including the transfer of title to all or any portion of the Partnership Property;

    (i) To execute in furtherance of any or all of the purposes of the partnership, any deed, lease, deed of trust, mortgage, promissory note, bill of sale, assignment, contract, or other instrument purporting to convey or encumber Partnership Property or to create indebtedness of the Partnership;

    (j) To commence, defend, compromise, settle, or refer to arbitration any claim, proceeding, or litigation that pertains to the Partnership or any Partnership Property, provided that the partnership shall not bear the expenses of any litigation which arises as a result of the gross negligence, willful misconduct, or fraud of any partner indemnified under this Agreement;

8

(k) To prepare and file on behalf of the Partnership any statement, report, return, or document required by the Securities and Exchange Commission or any other state or federal securities agency or other governmental agency;

(l) Subject to the other provisions of this Agreement, to enter into, make, and perform such contracts, agreements, and other undertakings, and to do such other acts as it may deem necessary or advisable for, or as may be incidental to, the conduct of the business of the Partnership contemplated by Section 2.3 hereof, including, without in any manner limiting the generality of the foregoing, contracts, agreements, undertakings, and transactions with any partner or with any other person, firm, or corporation having any business, financial, or other relationship with any Partner or Partners; provided, however, such transactions with such persons and entities shall be on terms no less favorable to the Partnership than are generally afforded to unrelated third parties in comparable transactions;

(m) To sign or endorse in his own capacity on behalf of the Partnership any contracts, deeds, mortgages, deeds of trust, notes, stock or other security certificates, or other documents or instruments;

(n) To respond or cause a response to be made as soon as practicable to all inquiries received from Limited Partners concerning the operations and affairs of the partnership, and to supervise and coordinate all communications between the partnership and the Limited partners;

(o) To reimburse any Partner, affiliate, or related person for any reasonable cost or expense incurred on behalf of the Partnership in a manner authorized by this Agreement;

(p) To borrow from any Partner, bank, or other lending institution in such amounts and upon such terms and conditions as the General Partner shall determine to be in the best interests of the Partnership; to provide as security for the repayment of such borrowing, all or any portion of the Partnership Property; and to execute such security instruments and deeds of trust as the General Partner shall determine to be in the best interests of the Partnership; and

(q) Generally, to possess and exercise any and all of the rights, powers, and privileges of a general partner under the Act and the laws of the State of Texas.

In the event there is more than one General Partner, the rights and powers of the General Partner hereunder shall be exercised by them in such manner as they may agree. In the absence of an agreement among such General Partners, no General Partner shall exercise any of such rights and powers without the unanimous consent of all such General Partners.

9

**Section 4.4**  <u>Duties of the General Partner</u>.  The General Partner agrees that it will diligently and faithfully devote such time to the business of the Partnership in the management, supervision, and administration of the business and operations of the Partnership in accordance with the applicable law as may be required to carry out the purposes of the Partnership.  The General Partner further agrees that it will, on behalf of the Partnership and at the expense of the Partnership, protect the business and profits of the Partnership from any and all infringements of any patents or other rights owned by the Partnership or the Partners or either of them in whatever manner the General partner deems reasonable and appropriate under the circumstances, including litigation to enforce the patent or other rights of the Partnership.

**Section 4.5**  <u>General Partner to Act in Best Interests of Partnership</u>.  In carrying out its duties and exercising its powers hereunder, the General Partner shall exercise reasonable skill and care and use its best judgement and shall act at all times in what it deems to be in the best interests of the Partnership and, in the case of any conflict between the best interests of the General Partner and the best interests of the Partnership, the General Partner shall not, any other provisions hereof to the contrary notwithstanding, act in a manner inconsistent with the best interests of the Partnership or inconsistent with this Agreement.  Further, subject to the foregoing sentence, the General Partner shall not be liable, responsible, or accountable in damages or otherwise to any other Partner for any acts performed or omitted by it in good faith and within the scope of this Agreement.  More specifically, but without limiting the generality of the foregoing sentence, the General Partner shall not be liable for good faith mistakes of judgement or for losses due to such mistakes of any employee, broker, or other agent of the Partnership.  The General Partner shall, however, be liable for its actions to the extent they are attributable to gross negligence, willful misconduct, or fraud.

**Section 4.6**  <u>Right to Rely on the General Partner</u>.  Any person dealing with the partnership may rely upon a certificate signed by the General Partner as to:

      (a) The identity of the General Partner or any Limited Partner;

      (b) The existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the General Partner or which are in any other manner pertinent to the affairs of the Partnership;

      (c) The persons who are authorized to execute and deliver any instrument or document of the Partnership; or

      (d) Any act or failure to act by the Partnership or any other matter whatsoever involving the Partnership or any Partner.

**Section 4.7**  <u>Limitations on Powers of the General Partner</u>.  The General Partner shall have no authority to:

      (a) Do any act in contravention of the Certificate, this Agreement, or the Act;

10

(b) Do any act which would make it impossible to carry on the ordinary business of the Partnership;

(c) Possess any Partnership Property, or assign, transfer, or pledge the rights of the Partnership in specific Partnership Property for other than a partnership purpose or the benefit of the partnership, or commingle the funds of the Partnership with the funds of any other person;

(d) Admit a person as a General Partner or a Limited Partner of the partnership except as provided in this Agreement;

(e) Permit the Partnership to redeem or repurchase Partnership Interests except as provided in this Agreement.

(f) Take any action which would cause the Partnership to be treated as other than a limited partnership for federal income tax purposes or under the laws of any applicable jurisdiction;

(g) Without the prior written consent of all of the Partners, sell all or substantially all of the assets of the partnership; or

(h) File a voluntary bankruptcy petition on behalf of the Partnership.

**Section 4.8** Tax Matters Partner. The General Partner shall act as the "Tax Matters Partner" as that term is defined in Section 6231 of the Code. In addition to the duty of the Tax Matters Partner under Section 6223(g) of the Code to keep each Partner informed of all administrative and judicial tax proceedings, the following provisions shall apply with respect to the activities of the Tax Matters Partner:

(a) The Tax Matters Partner shall not consent to an extension of the statute of limitations without the consent of the Majority in Interests of the Partners.

(b) The Tax Matters Partner shall not bring suit in any forum other than the United States Tax Court without the consent of a Majority in Interests of the Partners.

(c) Following the receipt by the Tax Matters Partner of any notice that the Internal Revenue Service intends to audit any tax return of the Partnership, the Tax Matters Partner shall promptly provide to the Partners a copy of all further written communication to and from the Internal Revenue Service concerning any such proceeding.

(d) The Tax Matters Partner shall take all procedural steps reasonably requested by a Majority in Interests of the Partners, including but not limited to requesting extensions of time in which to protest any notice of proposed deficiency and the time, date, and place of any meeting or hearings concerning the tax matters in issue.

11

**Section 4.9** Other Business of Partners. Any Partner may engage independently or with others in other investment or business ventures of any kind, render advice or services of any kind to other investors or ventures, or make or manage other investments or ventures. Neither the Partnership nor any Partner shall have any right by virtue of this Agreement or the partnership relationship created hereby in or to such other ventures or activities or to the income or proceeds derived therefrom, and the pursuit of such ventures, even if competitive with the business of the Partnership, shall not be deemed wrongful or improper.

**Section 4.10** Limited Indemnification of Partners. The Partnership herewith indemnifies and holds harmless the Partners from any and all loss, damage, liability, or expense incurred by them at any time by reason of or arising out of any act performed by them on behalf of the Partnership or in furtherance of the business of the partnership, including all such liabilities under federal and state securities laws (including the Securities Act of 1933, as amended), as permitted by law, except for liability for breach of fiduciary duty, gross negligence, willful misconduct, or fraud; provided, that the satisfaction of any indemnification and any holding harmless shall be from and limited to Partnership assets and no partner shall have any personal liability on account thereof. This indemnification shall not extend to the income tax consequences resulting to a Partner for his participation in the Partnership.

**Section 4.11** No Management by Limited Partners and Transferees. No Limited Partner or transferee (other than the General Partner or any agent or employee of the General Partner, in his capacity as such, if such person shall also be a Limited Partner) shall take part in the day-to-day management, operation or control of the business and affairs of the partnership. The Limited Partners and transferees shall not have any right, power, or authority to transact any business in the name of the Partnership or to act for or on behalf of or to bind the Partnership. The Limited Partners and transferees shall have no rights other than those specifically provided herein or granted by law where consistent with a valid provision hereof. In the event any laws, rules, or regulations applicable to the Partnership, or to the sale or issuance of any Interest in the Partnership, require a Limited Partner, or any group or class thereof, to have certain rights, options, privileges, or consents not granted by the terms of this Agreement, then such Limited Partners shall have and enjoy such rights, options, privileges, and consents so long as (but only so long as) the existence thereof does not result in a loss of limitation on liability enjoyed by the Limited Partners under the Act or the applicable laws of any other jurisdiction governing the Partnership.

**Section 4.12** Compensation to General Partner. Annually, the General Partner(s) shall each receive reasonable compensation for services rendered, which shall be in addition to their respective share of Partnership profits. It is the intention of the parties that each General Partner shall receive reasonable compensation for services rendered by him to the Partnership. His compensation shall be reviewed periodically and adjusted based on the profitability of the Partnership and the effectiveness of the General Partner.

12

## ARTICLE V
## Allocations

**Section 5.1** <u>Allocation of Income and Losses</u>. Except as otherwise provided in Exhibit C attached hereto, Income and Losses shall be allocated to the partners in accordance with their respective Interests in the income and losses of the Partnership as set forth in Exhibit B attached hereto, as such exhibit may be amended from time to time.

**Section 5.2** <u>Miscellaneous</u>.

(a) <u>Allocations Among General Partner and Limited Partners</u>. If there is more than one General Partner, all items allocated to the General Partner pursuant to this Article V shall be allocated among the General Partners in accordance with their respective Interests as set forth on Exhibit B attached hereto, as such exhibit may be amended from time to time. Items allocated to the Limited Partners pursuant to this Article V shall be allocated in accordance with their respective Interests as set forth on Exhibit B attached hereto, as such exhibit may be amended from time to time.

(b) <u>Allocations Attributable to Particular Periods</u>. For purposes of determining Income, Losses, or any other items allocable to any period, such items shall be determined on a daily, monthly, or other basis, as determined by the General Partner using any permissible method under Code Section 706 and the Treasury Regulations thereunder.

(c) <u>Other Items</u>. Except as otherwise provided in this Agreement, all items of Partnership Income, gain, Loss, deduction and any other allocations not otherwise provided for, shall be allocated among the partners in the same proportion as they share Income or Losses, as the case may be, for the year.

(d) <u>Tax Consequences</u>. The partner are aware of the income tax consequences of the allocations made by this Article V and hereby agree to be bound by this Article V as reflected on the income tax returns of the partnership in reporting their shares of Partnership Income and Losses for federal income tax purposes.

## ARTICLE VI
## Distributions

**Section 6.1** <u>Distributions of Cash Flow</u>. All Distributions shall be made from time to time in such amounts and at such times as the General Partner may determine. Except as provided in Section 7.2 hereof, Distributions shall be distributed to the Partners in proportion to their respective Interests in Income or Capital, depending upon whether a particular distribution is a distribution of income or a distribution of capital.

**Section 6.2** <u>Distributions Among General and Limited Partners</u>. If there is more than one General Partner, all distributions to the General Partner pursuant to this Article VI shall be distributed among the General Partners in accordance with their respective Interests as set forth on Exhibit B attached hereto, as such exhibit may be amended from time to time. If there is more than one Limited Partner distributions to the Limited Partners pursuant to this Article VI shall be distributed among the Limited Partners in accordance with their respective Interests as set forth on Exhibit B attached hereto, as such exhibit may be amended from time to time.

**Section 6.3** <u>Tax Withholding</u>. The General Partner shall be authorized to pay, on behalf of any Partner, any amounts to a federal, state, or local taxing authority as may be necessary for the partnership to comply with tax withholding provisions of the Code, or other income tax or revenue laws of any applicable taxing authority, whether because a Partner is considered a nonresident for income tax purposes in a state where the partnership is doing business or for any other reason. Any such amount paid by the partnership shall be treated as a Distribution by the partnership to such Partner, and shall be offset against any Distribution otherwise due to the partner. In addition, if the amount of any such tax payment exceeds the amount of unpaid Distributions otherwise owing to such Partner with respect to the year for which such tax payment was made, the General Partner shall, in its discretion, either treat such excess amount as an offset against any future Distributions to be made to such Partner, or require the Partner on whose behalf such payments were made to reimburse the Partnership for such excess amount.

## ARTICLE VII
## <u>Dissolution of the Partnership; Winding Up</u>

**Section 7.1** <u>Dissolution of the Partnership</u>. The Partnership shall be dissolved upon the occurrence of any of the following events, whichever shall occur:

  (a)  Upon the written agreement of all of the Partners;

  (b)  The expiration of the term of the Partnership as provided in Section 2.5 hereof;

  (c)  The sale of all or a substantial portion of the Partnership Property, unless a Majority in Interests of the Partners agree in writing at the time of such sale that the sale will not cause the dissolution of the Partnership;

  (d)  The occurrence of any event which, under the Act or any other applicable law, causes the dissolution of the Partnership, except as expressly modified herein; and

  (e)  The occurrence with respect to the General Partner, of its: (i) withdrawal (as defined in Section 8.1) from the Partnership; (ii) removal as a General Partner; (iii) death; (iv) incapacity; (v) filing of a petition in voluntary bankruptcy; or (vi) having commenced against it an involuntary bankruptcy case which has not been vacated, discharged, or bonded within sixty (60) days; except that (i) the remaining General

Partners, if any, may elect to continue the Partnership without dissolution, or (ii) if there are no remaining General Partners, the Limited Partners may, by unanimous consent, elect to continue the Partnership without dissolution by designating a new General Partner who shall accept and agree in writing to be bound as a General Partner under this Agreement. In either such event, the Interest of the former General Partner shall be converted to that of a Limited Partner. The election of the remaining General Partner to continue the Partnership, or the election of the Limited Partners to continue the Partnership and the election of the new General Partner, shall be made within ninety (90) days after notice of such event of dissolution, and shall be effective as of the date of such event. The failure of the remaining General Partner to continue the Partnership, or the failure of the Limited Partners to continue the Partnership and to elect a new General Partner, within such ninety(90) day period shall result in the dissolution of the Partnership.

**Section 7.2** Winding Up and Liquidation.

(a) Upon the dissolution of the Partnership, its assets shall be sold and liquidated, and its business and affairs shall be wound up as soon as practicable thereafter by the Partners. In winding up the Partnership and liquidating its assets, the General Partner or other person designated by the General Partner for such purpose may arrange for the collection and disbursement to the Partners of any future receipts from the Partnership Property or other sums to which the Partnership may be entitled, or may sell the Partnership's interest in the Partnership Property to any person, including persons related to any of the Partners, on such terms and for such consideration as shall be consistent with obtaining the fair market value thereof.

(b) Upon the dissolution of the Partnership, the assets, if any, of the Partnership available for Distribution from the liquidation of any such assets, shall be applied and distributed in the following manner and order, to the extent available:

(i) To the payment of or provision for all debts, liabilities, and obligations of the Partnership to any person (other than Partners) and the expenses of liquidation; then

(ii) To the payment of all debts and liabilities (including accrued interest) to the Partners (except those on account of their Capital Accounts); then

(iii) To the Partners in accordance with the credit (i.e., positive) balances in their Capital Accounts; then

(iv) The balance, if any, to the partners in accordance with their respective partnership Interests in the Income of the Partnership.

15

(c) If the Partners determine that the immediate sale of part or all of the assets of the Partnership would result in an unnecessary loss to the Partnership or is otherwise impossible or impracticable (whether as a result of federal securities law restrictions or limitations, or otherwise), then the Partners may, to the extent not then prohibited by the Act, either direct liquidation of such assets for a reasonable time (except those assets necessary to satisfy the debts, liabilities, and obligations of the Partnership as provided in this Section 7.2; and subject, however, to the timing requirements of Section 7.3 below, and Treasury Regulations Section 1.704-1(b)(2)(ii)(b)), or distribute such assets to the Partners in kind. In the event any property other than cash is distributed, all such distributed property shall be treated as provided in Treasury Regulations Section 1.704-1(b)(2)(iv)(e)(1) for purposes of determining Capital Accounts, and the deemed Income or Losses thereon shall be allocated in accordance with the provisions of Article V hereof.

(d) Upon dissolution, a reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to minimize the losses normally attendant to a liquidation.

**Section 7.3** Compliance with Timing Requirement of Regulations. In the event of the liquidation of the Partnership within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), then (a) distributions shall be made pursuant to this Article VII (if such liquidation follows a dissolution of the Partnership) or Article VI thereof (if it does not) to the Partners who have positive Capital Accounts in compliance with Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2); and (b) if any General Partner's Capital Account has a deficit balance (after giving effect to all contributions, distributions, and allocations for all taxable years, including the year during which such liquidation occurs, such General Partner shall contribute to the capital of the Partnership the amount necessary to restore such deficit balance to zero in compliance with Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(3). Distributions pursuant to the foregoing sentence may be distributed to a trust established for the benefit of the Partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership, and paying any contingent or unforeseen liabilities or obligations of the Partnership or of the General Partner arising out of or in connection with the Partnership. The assets of any such trust shall be distributed to the partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the Partners pursuant to this Agreement.

### ARTICLE VIII
### Withdrawal of Partners; Transfer of Partners' Interests
### and Admission of New Partners

**Section 8.1** Restriction on Withdrawal; Transfer. Except as otherwise provided herein, without the consent of the General Partner and a majority in interest of the Partners, no Partner shall voluntarily withdraw, resign, or retire from the partnership (such event may be referred to herein as an event of "Withdrawal") or sell, transfer, encumber, or assign his Partnership

Interest at any time prior to the Partnership's dissolution and liquidation. The General Partner shall not voluntarily withdraw, resign, or retire from the Partnership or sell, transfer, encumber, or assign his Partnership Interest without the written agreement of a Majority in Interests of the Limited Partners.

**Section 8.2**    Effect of Withdrawal; Death of Partner.    The Partnership shall not be dissolved by the Withdrawal of a Partner, except in accordance with Section 7.1 hereof. The Partnership shall not be dissolved upon the death of a Limited Partner. Upon the death of a Limited Partner, his Interest in the Partnership shall vest in his heirs, legatees, devisees (including any trustee) or personal representative, who shall have the rights of a transferee of a living Partner, subject, however, to the restrictions and conditions precedent of this Article VIII. The Partnership shall be dissolved upon the death of the General Partner, unless the requirements and conditions of Section 7.1(e) hereof are timely satisfied by the remaining Partners.

**Section 8.3**    Continuation of Partnership Following Withdrawal.    In the event that the Withdrawal of a Partner does not result in dissolution pursuant to Section 7.1 hereof, the remaining Partners shall have the right to continue the Partnership business in accordance with the terms and conditions of this Agreement.

**Section 8.4**    Admission of New Partners.    The Partners, Gero-Psychiatric Services, Inc. and the Seastrunk Family Irrevocable Trust shall collectively have the exclusive right to make gifts of a portion or all of their respective Partnership Interests to members of the Seastrunk family, to a trust or trusts for their benefit, or to partnerships or corporations owned directly or indirectly by them, without the consent of any other Partners. In the event of such transfer, the form attached at Exhibit D, shall be duly executed and filed with the Partnership.

**Section 8.5**    Conditions Precedent to Transfer of Partner's Interest.    Notwithstanding the consent of the General Partner, no transfer may be made of all or a portion of any Partner's Interest if such transfer (i) constitutes a violation of the registration provisions of the securities Act of 1933, as amended, or the registration provisions of any applicable state securities provisions; or if (ii) after such transfer, the Partnership will be classified other than as a partnership for federal income tax purposes; or if (iii) such transfer, when taken together with other prior transfers, results in a "termination" of the Partnership for federal income tax purposes. The General Partner may require, as a condition precedent to any transfer of a Partnership Interest, delivery to the Partnership, at the proposed transferor's expense, of an opinion of counsel satisfactory (both as to the counsel and substance of the opinion) to the General Partner that the transfer will not result in the occurrence of any of the foregoing conditions precedent.

**Section 8.6**    Substitute or Additional Partners; Conditions Precedent.    No transferee of a Partner's Interest in the Partnership or additional Limited Partners shall have the right to become a Partner in place of his transferor, or otherwise, unless all of the following conditions precedent are satisfied:

17

(a) In the event of an assignment, a duly executed and acknowledged written instrument of assignment has been filed with the Partnership by the assignor which sets forth that the assignee becomes a substitute Partner in place of the assignor.

(b) The transferor and transferee or additional Limited Partners execute and acknowledge such other instruments as the General Partner may deem necessary or desirable to effect such transfer or admission, including, but not limited to, the written acceptance and adoption by the transferee or additional Limited Partners of the provisions of this Agreement.

(c) The written consent of the General Partner to such transfer or admission of a Limited Partner shall be obtained, the granting or denial of which shall be within the sole and absolute discretion of the General Partner.

(d) The transferee shall have provided the Partnership with such notification as may be required by Section 6050K of the Code.

(e) Payment has been made to the partnership of all costs and expenses of admitting any such transferee or additional Limited Partner to the Partnership, together with a transfer fee of $25,000, unless such fee is waived by the General Partner.

Provided, however, any or all of the preceding conditions may be waived, and such transferee shall have the right to become a Partner in place of his transferor, upon the unanimous written consent of all the Partners.

**Section 8.7**    Further Transfer by Transferee. A transferee of any Interest who does not become a Partner and who desires to make a further transfer of such Interest shall be subject to all the provisions of this Article VIII to the same extent and in the same manner as any Partner desiring to make a transfer of his Interest.

**Section 8.8**    Determination of Distributive Share When Partner's Interest Changes. Upon the transfer of a Partner's Interest or when a Partner's Interest otherwise changes, Income, Losses, and tax credits for the Partnership's taxable year during which such change occurs shall be determined by the use of any method prescribed by Code Section 706(d) that takes into account the varying interests of the Partners in the Partnership during the taxable year. Selection of the specific allowable method shall be made by the General Partner unless a transferor Partner and transferee themselves specify a method which method is acceptable to the General Partner; provided, however, if the Partnership utilizes the cash method of accounting, then certain "allocable cash basis items" as defined in Code Section 706(d)(2) shall be allocated as therein specified.

18

**Section 8.9**    Rights and Liabilities of and Restrictions on Transferee.  No person shall be recognized as a transferee of any Interest if such Interest was transferred in violation of this Article VIII.  No transferee of an Interest in the Partnership shall have the right to participate in the Partnership, inspect the books of account of the Partnership, or exercise any other right of a Partner until admitted as a Partner.  Notwithstanding the failure of such transferee to be admitted as a Partner, such transferee shall be entitled to receive, with respect to the Partnership Interest validly transferred to him, the distributions and the allocations and distributive shares of Income, Losses, and tax credits otherwise pertaining thereto under this Agreement, and upon demand, may receive copies of all reports thereafter delivered pursuant to the requirements of this Agreement; provided, the Partnership shall have first received notice of such transfer and all required consents thereto shall have been obtained and other conditions precedent to transfer thereof, as set forth herein or otherwise required by applicable law, shall have been satisfied. The Partnership's tax returns shall be prepared to reflect transferees as Partners for tax purposes.

## ARTICLE IX
### Books; Depository Accounts; Accounting Reports; and Elections

**Section 9.1**    Books of Account.  At all times during the continuance of the Partnership, the General Partner shall maintain or cause to be maintained true and full financial records and books of account showing all receipts and expenditures, assets and liabilities, profits and losses, and all other records necessary for recording the Partnership's business and affairs, including those sufficient to record the allocations and Distributions required by the provisions of this Agreement.

**Section 9.2**    Access to Records; Audit.  The books of account, tax returns, reports, records, this Agreement, and all other documents of the Partnership shall at all times be kept and maintained at the principal office of the Partnership, or at such other place in the City of Dallas, State of Texas, as the General Partner may determine.  Each Partner or his designated representative shall have access to such financial books, tax returns, reports, records, and documents during reasonable business hours and may inspect and make copies of any of them. A Majority in Interests of the Partners may request that an audit be undertaken by a certified public accountant at any time, with the costs of such audit to be paid for by the Partnership.

**Section 9.3**    Depository Accounts and Investment of Funds.  The General Partner may open and maintain on behalf of the Partnership one or more depository accounts at such times and in such depositories as he shall determine, in which accounts all monies received by or on behalf of the Partnership shall be deposited.  All withdrawals from such accounts shall be made upon the signature of the General Partner or such other person or persons as the General Partner may from time to time designate in writing.

19

**Section 9.4**    Reports.

(a)    The General Partner shall prepare or cause to be prepared, at the Partnership's expense, at the end of each year of the Partnership, annual financial statements showing the financial condition of the Partnership at the end of such year and the results of its operations for the year then ended, which annual financial statements shall be prepared utilizing the same accounting principles and methods as used to report Partnership Income or Losses for income tax purposes.

(b)    In addition to the financial statements provided for in Section 9.4(a) above, the General partner shall prepare or cause to be prepared at the Partnership's expense:

(i)    Income tax returns for the Partnership, and the General Partner shall timely file such returns with the appropriate taxing authorities; and

(ii)    A notice of each Partner's share of the Partnership Income and Losses for federal income tax purposes for each year, and of any other information necessary or desirable for preparation by each Partner of his federal and state income tax return.

**Section 9.5**    Tax Accounting Methods; Periods; Elections.    The Partnership shall keep its financial accounting records utilizing the same methods used to report its Income and Losses for income tax purposes.    Unless otherwise provided in this Agreement, the determination of whether to utilize the cash or accrual method of accounting, whether to utilize accelerated cost recovery or another method of depreciation, and the selection among any other allowable, alternative tax accounting methods or principles shall be made by the General Partner and shall be those methods and principles which are determined by him to be in the best interests of the Partners.    The Partnership's annual financial accounting and tax accounting period shall be the calendar year, unless another accounting period is required by the Code.    With the prior consent of a Majority in Interests of the Partners, the General Partner may cause the Partnership to make any election allowable to the Partnership under the Code, including elections under Code Section 754 with respect to the Partnership distributions described in Code Section 734 and with respect to transfers of Partnership Interests described in Code Section 743.

## ARTICLE X
## Meetings and Voting Rights of Partners

**Section 10.1**    Meetings.

(a)    Meetings of the Partnership for any purpose may be called by the General Partner and shall be called by the General Partner upon receipt of a request in writing signed by any one or more of the Partners.    Such request shall state the purpose of the proposed meeting and the matters proposed to be acted upon at the meeting.    Such meeting shall be held at such place as may be designated by the General Partner or, if called upon the request of a limited Partner, at a place located in Dallas, Texas or Duncanville, Texas, as may be designated by such other Partner.

(b) A notice of any such meeting shall be given either personally or by mail, not less than five (5) days nor more than sixty (60) days before the date of the meeting, to each Partner at his address as specified in Section 11.6 below. Such notice shall be in writing, and shall state the place, date, and hour of the meeting, and shall indicate that it is being issued at or by the direction of the Partners calling the meeting. If the meeting is adjourned to another time or place, and if any announcement of the adjournment of time or place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting except to those Partners not in attendance at the meeting. The presence in person or by proxy of a Majority in Interests of the Partners shall constitute a quorum at all meetings of the Partners which shall be the number of Partners required for any meeting; provided, however, that if there be no such quorum, the Partners holding a majority of the Partnership percentage Interests so present or so represented may adjourn the meeting from time to time, until a quorum shall have been obtained. No notice of the time, place, or purpose of any meeting of Partners need be given to any partner who attends in person or is represented by proxy (except when the Partner attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business on the ground that the meeting is not lawfully called or convened), or to any Partner entitled to such notice who, in writing (executed and filed with the records of the meeting, either before or after the time thereof) waives such notice.

(c) For the purpose of determining the Partners entitled to vote on, or to vote at, any meeting of the Partnership or any adjournment thereof, the Partners requesting such meeting may fix, in advance, a date as the record date for any such determination of Partners. Such date shall not be less than five (5) days nor more than sixty (60) days before any such meeting.

(d) Each Partner may authorize any person or persons to act for him by proxy in all matters in which a Partner is entitled to participate, whether by waiving notice of any meeting, or voting or participating at a meeting. Every proxy must be signed by the Partner or his attorney-in-fact. No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the partner executing it.

(e) Unless otherwise provided herein with respect to a particular matter, the affirmative vote of the Partners holding a majority of the Partnership percentage Interests present shall be required to carry any motion properly before the Partners.

**Section 10.2** Unanimous Written Consent. Any action of the Partners may be taken without a meeting upon the unanimous written consent of the Partners.

21

## ARTICLE XI
## Miscellaneous Provisions

**Section 11.1** Waiver of Provisions. The waiver of compliance at any time with respect to any of the provisions, terms, or conditions of this Agreement shall not be considered a waiver of such provisions, term, or condition itself or of any of the other provisions, terms, or conditions hereof or bar its enforcement at any time thereafter.

**Section 11.2** Interpretation and Construction. This Agreement contains the entire agreement among the Partners and any modification or amendment hereto must be in writing signed by each of the Partners. Where the context so requires, the masculine shall include the feminine and the neuter and the singular shall include the plural. The headings and captions in this Agreement are inserted for convenience and identification only and are in no way intended to define, limit, or expand the scope or intent of this Agreement or any provisions hereof. Unless otherwise specified, the references to Section and Article in this Agreement are to the Sections and Articles of this Agreement.

**Section 11.3** Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties hereto hereby submit to the jurisdiction of the courts of the State of Texas for the adjudication of any matter arising with respect to this Agreement.

**Section 11.4** Partial Invalidity. In the event that any part or provision of this Agreement shall be determined to be invalid or unenforceable, the remaining parts and provisions of this Agreement which can be separated from the invalid, unenforceable provisions shall continue in full force and effect to the greatest extent possible.

**Section 11.5** Binding on Successors. The terms, conditions, and provisions of this Agreement shall inure to the benefit of, and be binding upon the parties hereto and their respective heirs, successors, distributees, legal representatives, and assigns. However, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership or of any Partner.

**Section 11.6** Notices and Delivery.

(a) To Partners. Any notice to be given hereunder at any time to any Partner, or any documents, reports, or returns required by this Agreement to be delivered to any Partner, may be delivered personally or mailed to such Partner, postage prepaid, addressed to him at the address set forth on Exhibit A or such other address as he shall by notice to the Partnership have designated as his address for the mailing of all notices hereunder. Any notice, or any document, report, or return so delivered or mailed shall be deemed to have been given or delivered to such Partner at the time it is delivered or mailed, as the case may be.

22

(b) To the Partnership. Any notice to be given to the Partnership hereunder may either be delivered personally to each partner or mailed to the Partnership, by registered or certified mail, postage prepaid, addressed to the Partnership at its principal office. Any notice so delivered or mailed shall be deemed to have been given to the partnership at the time it is delivered or mailed, as the case may be.

**Section 11.7** Counterparts. This Agreement may be executed in any number of separate counterparts, each of which shall be deemed an original, and the several counterparts taken together shall constitute the agreement of the Partners.

**Section 11.8** Statutory Provisions. Any statutory or regulatory reference in this Agreement shall include a reference to any successor to such statute or regulation and/or revision thereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands and seals as of the day and year first above written.

> **GENERAL PARTNER:**
> Gero-Psychiatric Service Opportunities, Inc.
>
> By: _____
> Jay Walter Seastrunk II, President
>
> **LIMITED PARTNER:**
> Seastrunk Family Irrevocable Trust
>
> By: _____
> Jay Walter Seastrunk, Co-Trustee
>
> By: _____
> Denise Marie Seastrunk, Co-Trustee

23

# EXHIBIT A
## TO
## LIMITED PARTNERSHIP AGREEMENT
## OF
## REHABILITATION STAFFING SERVICES, LTD.

**Name and Address**

**Taxpayer
I.D. Number**

**General Partner:**

Gero-Psychiatric Service Opportunities, Inc.
102 East Freeman
Duncanville, Texas 75116

_75-_ _____

**Limited Partner:**

The Seastrunk Family Irrevocable Trust
102 East Freeman
Duncanville, Texas 75116

75- 6593470

24

**EXHIBIT B**
**TO**
**LIMITED PARTNERSHIP AGREEMENT**
**OF**
**REHABILITATION STAFFING SERVICES, LTD.**

| Name of Partner | Capital Contribution | Percentage Interest in Income & Losses | Percentage Interest in Capital |
|---|---|---|---|
| **General Partner:** | | | |
| **Gero-Psychiatric Service Opportunities, Inc.** | **$ 20.00** | **2%** | **2%** |
| **Limited Partner:** | | | |
| **The Seastrunk Family Irrevocable Trust** | **$ 980.00** | **98%** | **98%** |
| | **$1,000.00** | **100%** | **100%** |

25

**EXHIBIT C**
**TO**
**LIMITED PARTNERSHIP AGREEMENT**
**OF**
**REHABILITATION STAFFING SERVICES, LTD.**

Capital Accounts; Regulatory Allocations

Section C.1    Definitions.

(a)    "Adjusted Capital Account" shall mean the Partner's Capital Account increased by (i) the amount of any deficit balance that the Partner is obligated to restore upon liquidation of the Partnership in accordance with Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(3) or is treated as obligated to restore pursuant to Treasury Regulations Section 1.704-1(b)(2)(ii)(c) and (ii) the amount of the Partner's share of Partnership Minimum Gain or Partner Nonrecourse Debt Minimum Gain, and decreased by (iii) the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

(b)    "Nonrecourse Deductions" shall mean a liability of the Partnership for which no Partner bears the economic risk of loss within the meaning of Treasury Regulations Section 1.752-2.

(c)    "Nonrecourse Liability" shall mean a liability of the Partnership for which no Partner bears the economic risk of loss within the meaning of Treasury Regulations Section 1.752-2.

(d)    "Partner Nonrecourse Debt" shall have the meaning set forth in Section 1.704-2(b)(4) of the Regulations.

(e)    "Partner Nonrecourse Debt Minimum Gain" shall mean an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Regulations.

(f)    "Partner Nonrecourse Deductions" shall have the meaning set forth in Sections 1.704-2(i)(1) and 1.704-2(i)(2) of the Regulations.

(g)    "Partnership Minimum Gain" shall have the meaning set forth in Sections 1.704-2(b)(2) and 1.704-2(d) of the Regulations.

**Section C.2**    Maintenance of Capital Accounts.    In the maintenance of the Capital Account for each Partner, the following provisions shall apply:

26

(a) To each partner's Capital Account there shall be credited such Partner's Capital Contributions, such partner's distributive share of Income, any items in the nature of income or gain that are specifically allocated pursuant to Sections. C.3 and C.4 hereof, and the amount of any Partnership liabilities that are assumed by such Partner or that are secured by any partnership Property distributed to such Partner; and

(b) To each Partner's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any partnership Property distributed to such partner pursuant to any provision of this Agreement, such Partner's distributive share of Losses, and the amount of any liabilities of such Partner that are assumed by the Partnership or that are secured by any property contributed by such partner to the Partnership.

(c) In the event that any Partner's Interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent that it relates to the transferred Interest.

(d) In the event that the Gross Asset Values of the Partnership assets are adjusted pursuant to Section 1.11 of the Agreement, the Capital Accounts of all Partners shall be adjusted simultaneously to reflect the aggregate adjustments as if the Partnership recognized gain or loss equal to the amount of such aggregate adjustment.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b), and such provisions shall be interpreted and applied in a manner consistent with such Regulations.

**Section C.3**   Special Allocations. The following special allocations shall be made in the following order:

(a) Minimum Gain Chargeback. Except as otherwise provided in Section 1.704-2(f) of the Regulations, notwithstanding any other provisions of this Exhibit C or of Article V, if there is a net decrease in Partnership Minimum Gain during any Fiscal Year, each partner shall be specially allocated items of Partnership income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Sections 1.704-2(f)(6) and 1.704-2(j)(2) of the Regulations. This Section C.3(a) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(f) of the Regulations and shall be interpreted consistently therewith.

27

(b) <u>Partner Minimum Gain Chargeback</u>. Except as otherwise provided in Section 1.704-2(i)(4) of the Regulations, notwithstanding any other provision of this Exhibit C or of Article V, if there is a net decrease in Partner Nonrecourse Debt Minimum Gain attributable to a Partner Nonrecourse Debt during any Partnership Fiscal Year, each partner who has a share of the Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(5) of the Regulations, shall be specially allocated items of Partnership income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) is an amount equal to such Partner's share of the net decrease in Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Section 1.704-2(i)(4) and 1.704-2(j)(2) of the Regulations. This Section C.3(b) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(i)(4) of the Regulations and shall be interpreted consistently therewith.

(c) <u>Qualified Income Offset</u>. In the event any Partner unexpectedly receives any adjustments, allocations. or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), Section 1.704-1(b)(2)(ii)(d)(5, or Section 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the deficit Adjusted Capital Account of such Partner as quickly as possible, provided that an allocation pursuant to this Section C.3(c) shall be made only if and to the extent that such Partner would have a deficit Adjusted Capital Account after all other allocations provided for this Section C.3 have been tentatively made as if this Section C.3(c) were not in the Agreement.

(d) <u>Gross Income Allocation</u>. In the event any Partner has a deficit Capital Account at the end of any partnership Fiscal Year which is in excess of the sum of (i) the amount such Partner is obligated to restore pursuant to any provision of this Agreement (other than clause (b) of Section 11.3), and (ii) the amount such Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible,, provided that an allocation pursuant to this Section C.3(d) shall be made only if and to the extent that such Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Section C.3 have been made as if Section C.3(c) hereof and this Section C.3(d) were not in the Agreement.

(e) <u>Nonrecourse Deductions</u>. Nonrecourse Deductions for any Fiscal Year shall be specially allocated two percent (2%) to the General Partner and ninety-eight percent (98%) to the Limited Partners.

28

(f) <u>Partner Nonrecourse Deductions</u>. Any Partner Nonrecourse Deductions for any Fiscal Year shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulation Section 1.704-2(i)(1).

(g) <u>Section 754 Adjustments</u>. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Code Section 643(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m)(2) or Regulations Section 1.704-1(b)(2)(iv)(m)(4), to be taken into account in determining Capital Accounts as the result of a Distribution to a Partner in complete liquidation of his Interest in the Partnership, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increased the basis of the asset) or loss (if the adjustment increased the basis of the asset), and such gain or loss shall be specially allocated to the Partners in accordance with their Interests in the Partnership in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(2) applies, or to the Partner to whom such Distribution was made in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(4) applies.

**Section C.4**  <u>Curative Allocations</u>. The allocations set forth in Section C.3 hereof (the "Regulatory Allocations") are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss, or deduction pursuant to this Section C.4.  Therefore, notwithstanding any other provision of this Exhibit C (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of Partnership income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance such Partner would have had if the Regulatory Allocations were not part of the Agreement and all Partnership items were allocated pursuant to other sections of the Partnership Agreement.  In exercising its discretion under this Section, the General Partner shall take into account future Regulatory Allocations that, although not yet made, are likely to offset other Regulatory Allocations previously made.

**Section C.5**  <u>Code Section 704(c) Tax Allocations</u>. In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Gross Asset Value.

In the event the Gross Asset Value of any Partnership property is adjusted, subsequent allocations of income, gain, loss, and deduction with respect to such assets shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

Any elections or other decisions relating to such allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement.

**Section C.6** Compliance with Treasury Regulations. It is the intent of the Partners that, to the greatest extent possible, the allocations of all items of income, gain, loss, deduction, and credit under this Agreement (i) have "substantial economic effect" within the meaning of, or otherwise be in accordance with, Code Section 704(b) and the Treasury Regulations promulgated thereunder, and (ii) be consistent with the Partner's interests in the Partnership. Accordingly, to the extent adjustment to the allocations hereunder is necessary in order to be in compliance with the provisions of Code Section 704(b) and the Treasury Regulations thereunder, such necessary adjustments in the allocations shall be made, but only to the smallest extent necessary. Furthermore, if there has been any adjustment in the allocations to the Partners on account of the preceding sentence, subsequent allocations of income, gain, loss, deduction or credit shall, to the extent possible, be allocated to the Partners in the order and in a manner designed to result in each Partner's having a Capital Account balance equal to what it would have been had the allocation(s) pursuant to the preceding sentence not occurred, and in a manner that is likely to minimize any economic distortions that otherwise might result.

30

**EXHIBIT D**
**GIFT OF PARTNERSHIP INTEREST**
**REHABILITATION STAFFING SERVICES, LTD.**

The undersigned Limited Partner hereby gives to:

_____

a _____ percent (____%) interest in the _____
Limited Partnership, or a total of _____ percent (____%) interest.

This the _____ day of _____, 199____.


_____
(Signature)

_____
(Printed Name of Limited Partner)

31

## DECLARATION OF GEORGE P. SABATINO

1.     My name is George P. Sabatino.  I am over the age of twenty-one (21), of sound mind, and fully competent to make this affidavit.   I have personal knowledge of each fact stated in this affidavit, and each is true and correct.

2.     I am currently employed by Clark, Thomas & Winters, P.C. as a legal assistant. Attached at Tabs 1 and 2 are true and correct copies of the following documents as maintained on the Texas Secretary of State's website.

> Tab 1: Determination of Forfeiture of Gero-Psychiatric Service Opportunities, Inc.
>
> Tab 2: Certificate of Limited Partnership of Rehabilitation Staffing Services, Ltd.

3.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
George P. Sabatino



# The State of Texas

## Secretary of State

SECRETARY OF STATE
AUSTIN, TEXAS

DETERMINATION OF FORFEITURE PURSUANT TO SECTION 171.309, TEXAS
TAX CODE ANNOTATED

CAME TO BE CONSIDERED ON THE DATE SHOWN HEREON, FORFEITURE
OF THE CHARTER OR CERTIFICATE OF AUTHORITY OF THE
FOLLOWING CORPORATION: THE SECRETARY OF STATE FINDS AND
DETERMINES THE FOLLOWING:

CORPORATION NAME

GEROPSYCHIATRIC SERVICE OPPORTUNITIES, INC.

| CHARTER NO.-TYPE | RTDB FORFEITED | CERTIFICATE/CHARTER FORFEITED |
|---|---|---|
| 1319579-00 | 10/11/2000 | 03/23/2001 |

THAT THE COMPTROLLER OF PUBLIC ACCOUNTS HAS NOTIFIED THIS
OFFICE THAT SAID CORPORATION HAS FAILED TO FILE A CURRENT
YEAR FRANCHISE TAX REPORT TO ESTABLISH THE EXISTENCE OF
ASSETS FROM WHICH A JUDGEMENT FOR THE FRANCHISE TAXES,
PENALTIES AND COURT COSTS MAY BE SATISFIED.
THAT THE COMPTROLLER OF PUBLIC ACCOUNTS HAS FURTHER STATED
THAT THE SAID CORPORATION HAS FAILED OR REFUSED TO REVIVE
ITS RIGHT TO DO BUSINESS.

IT IS THEREFORE ORDERED THAT THE CHARTER OR CERTIFICATE OF
AUTHORITY OF THE ABOVE NAMED CORPORATION BE AND THE SAME IS
HEREBY FORFEITED WITHOUT JUDICIAL ASCERTAINMENT AND MADE
NULL AND VOID, AND THAT THE PROPER ENTRY BE MADE UPON THE
PERMANENT FILES AND RECORDS OF SUCH CORPORATION TO SHOW
SUCH FORFEITURE AS OF THE DATE HEREOF.



# The State of Texas

### Secretary of State
**MAY   20,  1998**

SHELLEY SCARBROUGH (LAW OFFICE OF WILLIAM J
2828 WOODSIDE
DALLAS          ,TX 75204


RE:        ◊
REHABILITATION STAFFING SERVICES, LTD.

FILING   NUMBER 00108922-10



_____
Alberto R. Gonzales, Secretary of State

**CERTIFICATE OF LIMITED PARTNERSHIP
OF
REHABILITATION STAFFING SERVICES, LTD.
A Texas Limited Partnership**



FILED
in the Office of the
Secretary of State of Texas

MAY 1 1 1998

Corporations Section

Pursuant to Sec. 2.01 of the Texas Revised Limited Partnership Act, the undersigned General Partner of REHABILITATION STAFFING SERVICES, LTD. hereby certifies that the following information is correct:

**I.     NAME:** The name of the Limited Partnership is:

REHABILITATION STAFFING SERVICES, LTD.

**II.     ADDRESS OF REGISTERED OFFICE and REGISTERED AGENT:** The address of the registered office of the Limited Partnership is:

102 East Freeman
Duncanville, TX 75116

The name and address of the registered agent for service of process is:

Jay W. Seastrunk II
102 East Freeman
Duncanville, TX 75116

**III.     PRINCIPAL OFFICE IN U.S.:** The address of the principal office of the Limited Partnership in the United States where records are to be kept or made available under Section 1.07 of the Texas Revised Limited Partnership Act is:

102 East Freeman
Duncanville, TX 75116

**IV.     GENERAL PARTNER:** The name, mailing address and street address of the General Partner is:

Gero-Psychiatric Service Opportunities, Inc.
102 East Freeman
Duncanville, Texas 75116

Certificate of Limited Partnership
of Rehabilitation Staffing Services, Ltd. - Page 1 of 2

GENERAL PARTNER:
GERO-PSYCHIATRIC SERVICE OPPORTUNITIES, INC.



Jay W. Seastrunk II, President

STATE OF TEXAS           }
                         }
COUNTY OF DALLAS         }

This instrument was acknowledged before me on the _7th_ day of ~~April~~ *May* 1998, by Jay W. Seastrunk II.

Notary Public in and for
The State of T E X A S

My Commission Expires: _10– 3 – 98_

WILLIAM E. JOHNSON III
Notary Public, State of Texas
My Commission Expires 10-03-98

Certificate of Limited Partnership
of Rehabilitation Staffing Services, Ltd. - Page 2 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **IRENE BARLOW** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **PFIZER, INC.; WARNER-LAMBERT** | § | **CIVIL ACTION NO.** |
| **COMPANY, L.L.C., formerly known as** | § | |
| **WARNER-LAMBERT COMPANY,** | § | **JURY REQUESTED** |
| **including its division PARKE-DAVIS and** | § | |
| **DR. JAY SEASTRUNK, M.D.,** | § | |
| **REHABILITATION STAFFING** | § | |
| **SERVICES, LTD. And GERO-** | § | |
| **SYCHIATRIC SERVICE OPPORTUNIT** | § | |

### DEFENDANT DR. JAY SEASTRUNK, M.D.'S JOINDER IN
### AND CONSENT TO NOTICE OF REMOVAL

Defendant Dr. Jay Seastrunk, M.D. joins in and consents to Defendants Pfizer Inc and

Warner-Lambert Company, L.L.C., formerly known as Warner-Lambert Company, on its own

behalf and on behalf of its unincorporated Parke-Davis Division's removal of this action from

the 200th Judicial District Court of Travis County, Texas, to the United States District Court for

the Western District of Texas, Austin Division.

DATED:   March 9, 2005.

Respectfully submitted,

By: _Robert K. Dowd_

Robert K. Dowd, P.C.
State Bar No. 06070800          by permission
3141 Hood Street, Suite 650
Dallas, Texas 75219-5026
(713) 227-8008

**Signed by Permission by Susan E. Burnett**
State Bar No. 20648050

**ATTORNEYS FOR DR. JAY SEASTRUNK,
M.D.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **IRENE BARLOW** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **PFIZER, INC.; WARNER-LAMBERT** | § | **CIVIL ACTION NO.** |
| **COMPANY, L.L.C., formerly known as** | § | |
| **WARNER-LAMBERT COMPANY,** | § | **JURY REQUESTED** |
| **including its division PARKE-DAVIS and** | § | |
| **DR. JAY SEASTRUNK, M.D.,** | § | |
| **REHABILITATION STAFFING** | § | |
| **SERVICES, LTD. And GERO-** | § | |
| **SYCHIATRIC SERVICE OPPORTUNIT** | § | |

## DEFENDANT REHABILITATION STAFFING SERVICES, LTD. JOINDER IN AND CONSENT TO NOTICE OF REMOVAL

Defendant Rehabilitation Staffing Services, Ltd. joins in and consents to Defendants

Pfizer Inc and Warner-Lambert Company, L.L.C., formerly known as Warner-Lambert

Company, on its own behalf and on behalf of its unincorporated Parke-Davis Division's removal

of this action from the 200th Judicial District Court of Travis County, Texas, to the United States

District Court for the Western District of Texas, Austin Division.

DATED:  March 9, 2005.

Respectfully submitted,

By:

William E. Johnson III
The Law Office of William E. Johnson III, P.C.
2828 Woodside
Dallas, Texas 75204

**Signed by Permission by Susan E. Burnett**
State Bar No. 20648050

**ATTORNEYS FOR REHABILITATION
STAFFING SERVICES, LTD.**